B. R. STUFF, doing business under the name and style of HOME COAL COMPANY, Appellant, v. MRS. C. E. STUFF et al., Appellees.

No. 42803.

APRIL 2, 1935.

E. A. Johnson and Wm. W. Crissman, for appellant.

G. P. Linville and Cahill, Boland & Hines, for appellees.

MITCHELL, J.—B. R. Stuff, C. E. Stuff and W. C. Stuff were partners, engaged during a period of years in the selling of potatoes under an arrangement by which they were to split the proceeds of said operation one-third and take out expenses. It appears that during certain years, to wit: 1926 and 1927, they sold some thirty or forty carloads of potatoes. Either in May or June of 1927 the three brothers got together and distributed certain money which the partnership had on hand at that time, part of it being paid to C. E. Stuff. After that the brothers purchased four more carloads of potatoes, the three brothers contributing the sum necessary to make the purchase. The potatoes were sold and the proceeds col-

lected some time in the fall of 1927. The collection for these potatoes was made at the office of B. R. Stuff.

On the 8th day of August, 1932, C. E. Stuff and his wife made, executed and delivered to the Home Coal Company, which was a trade-name under which B. R. Stuff was doing business, their note for $1,000, due 365 days after date. On September 1, 1933, the note not having been paid, B. R. Stuff commenced an action to recover the amount due upon the note. To this petition C. E. Stuff filed a separate answer and counterclaim, claiming that the plaintiff had failed to account to him for his share of the profits growing out of the potato business in which he and the plaintiff and his brother had engaged, and that the plaintiff had concealed from him that there was a profit and that his share of the profit amounted to $1,500, for which amount he asked judgment, interest and costs. Plaintiff then filed a motion to transfer to equity the trial of the counterclaim filed in the action by the defendant C. E. Stuff, and that all issues therein presented be transferred to the equity calendar and tried under equitable proceedings. The court sustained the motion to transfer to equity the issues presented by the counterclaim, and trial was had upon the issues involved in the counterclaim, and, after hearing the evidence and listening to the argument of counsel, the court found that there was due C. E. Stuff from B. R. Stuff in the adjustment of their partnership account the sum of $760, and that C. E. Stuff was entitled to credit on the note in suit in the sum of $760. Judgment was thereupon entered in favor of B. R. Stuff and against C. E. Stuff and Mrs. C. E. Stuff for the amount of said note, interest, statutory attorney's fees, and costs, less an endorsement of $760, to be as of the date of the note.

B. R. Stuff being dissatisfied with the judgment and decree of the lower court, has appealed to this court.

The first proposition raised by the appellant is that the statute of limitations had run upon the counterclaim prior to the time of the execution of the $1,000 note, to wit, August 8, 1932. Section 11019 of the 1931 Code provides:

"Counterclaim. A counterclaim may be pleaded as a defense to any cause of action, notwithstanding it is barred by the provisions of this chapter, if it was the property of the party pleading it at the time it became barred, and was not barred at the time the claim sued on originated; but no judgment thereon, except for costs, can be rendered in favor of the party so pleading it."

So we must ascertain whether the claim of the appellee on his counterclaim was barred on August 8, 1932, the date of the execution of the note.

The counterclaim is based upon a claim that C. E. Stuff was entitled to certain profits which were made by a partnership consisting of himself and his two brothers, including the appellant, B. R. Stuff. There can be no question under this record that these three brothers were engaged in a partnership venture, in the selling of potatoes. But, it is the claim of the appellant that the partnership ceased at the time that a certain settlement was had, either in May or June of 1927. There is no question that there was a meeting of the partners and a distribution of money which belonged to the partnership, but there is no evidence to show that the partnership was dissolved at that time. In fact, the evidence shows that after the distribution of the money took place, and some time the latter part of June, 1927, these same brothers again purchased four carloads of potatoes, and that part of the money used in the purchase of these four carloads was furnished by C. E. Stuff. The potatoes were sold during the summer and fall, and the money was not collected until late in the fall.

Paragraph 5 of section 11007 of the 1931 Code of Iowa provides that the statute of limitations on such claims as that of the appellee is fixed at 5 years after same accrues. Thus, it appears that the claim of the appellee did not accrue until late in the fall of 1927 and it was not barred when the promissory note sued upon by appellant was executed by appellee on August 8, 1932.

There is a material conflict in the evidence, but one cannot read this record without coming to the conclusion that there was a partnership arrangement between these brothers for the sale of potatoes; that under that arrangement they did business for several years. There is nothing in the record to show that at the time the money was distributed there was a dissolution of the partnership; in fact, they all admit that after the distribution of the money they purchased four more carloads of potatoes; that a part of the money used in the purchase of the last four carloads was furnished by the appellee C. E. Stuff; that B. R. Stuff failed to account to C. E. Stuff for his share of the profits made upon the sale of the last four carloads of potatoes, and it is for that amount which the lower court held B. R. Stuff, appellant, liable on the counterclaim. The able and distinguished trial court had the witnesses before him.

There was a serious conflict in the testimony. Upon a careful reading of the record, we are convinced that the trial court was right, and it therefore follows that judgment and decree of the lower court must be, and it is hereby, affirmed.

ANDERSON, C. J., and ALBERT, DONEGAN, POWERS, HAMILTON, PARSONS, and RICHARDS, JJ., concur.