Argued and submitted May 26, 1987, reversed and remanded January 13, reconsideration denied March 25, petition for review denied April 18, 1988 (305 Or 576)

## HATFIELD,
*Appellant,*

*v.*

## EMPIRE GENERAL LIFE INSURANCE COMPANY,
*Respondent.*

(16-85-00550; CA A41413)

748 P2d 152

Darst B. Atherly, Eugene, argued the cause for appellant. On the brief were Lann D. Leslie and Atherly, Butler & Burgott, Eugene.

Denise G. Fjordbeck, Eugene, argued the cause for respondent. On the brief were William G. Wheatley and Jaqua, Wheatley, Gallagher & Holland, P.C., Eugene.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff seeks to recover $250,000 plus interest under the terms of a life insurance policy for the death of her husband. Defendant maintains that it is not obligated to pay under an exclusion in the policy, because plaintiff's husband committed suicide. The trial court granted a summary judgment in favor of defendant. We reverse.

Plaintiff's husband was found dead in the front seat of his car. He had died from two bullet wounds. The first was to the right temple but did not penetrate the brain. The second was near the middle of the forehead and was almost certainly fatal. When discovered, he was lying across the front seat of the car with a .38 caliber revolver in his hand. The car was parked in a remote area of Lane County. Both car doors were closed, but the door on the driver's side was unlocked. There were no apparent signs of a struggle.

Evidence offered by defendant in support of its summary judgment motion included the deposition of the Lane County Medical Examiner, who had concluded that the death was a suicide. He based his opinion on the analysis of blood spatters found on the decedent's right hand, trace metal on his fingers indicating that he was holding the revolver when it fired, an autopsy report, police records and reports that the decedent had been depressed about his business immediately before his death. The medical examiner acknowledged during cross-examination in deposition that the fact that two shots were fired and both wounds were "non-contact" wounds was quite unusual in a suicide.[1] Plaintiff submitted affidavits, from persons who had known her husband, to the effect that he had not been sufficiently depressed to take his own life. Those affidavits also revealed that he had received death threats in the past and that he paid scrupulously close attention to his personal health.

Before a summary judgment may be allowed, the moving party must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of

---

[1] "Non-contact" wounds result when a gun is fired at a distance from the body. The medical examiner testified that most suicides are committed with the gun pressed against the head or body.

law. ORCP 47. We view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all reasonable and proper inferences that can be drawn from the evidence.

■■ The trial court relied heavily on the medical examiner's expert opinion. However, the weight to be attributed to the opinion of an expert witness is a matter within the province of the jury. *W. R. Chamberlin & Co. v. Northwestern Agencies,* 289 Or 201, 611 P2d 652 (1980). Plaintiff's cross-examination of him in deposition, plus the affidavits from persons who had seen the decedent shortly before his death, raise factual issues that merit consideration by a jury. The Supreme Court has held that the common law presumption against suicide is applicable in circumstances similar to those present here. *Nelson v. Salem Hospital,* 275 Or 451, 551 P2d 476 (1976); *U.S. National Bank v. Lloyd's,* 239 Or 298, 382 P2d 851, 396 P2d 765 (1964). We conclude that the trial court erred in granting summary judgment.

Reversed and remanded.